**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0313, <u>In the Matter of Jessica Nelson and Eric Nelson, Sr.</u>, the court on February 11, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The respondent, Eric Nelson, Sr. (father), appeals an order of the Circuit Court (<u>Moran</u>, J.) modifying his child support obligation to the petitioner, Jessica Michalczyk f/k/a Jessica Nelson (mother). He contends that the trial court erred by: (1) including certain components of his pay that he claims are excludable in his gross income pursuant to RSA 458-C:2, IV (2004); and (2) miscalculating his monthly income.

Trial courts have broad discretion in reviewing and modifying child support orders. <u>In the Matter of Forcier & Mueller</u>, 152 N.H. 463, 464 (2005). Because trial courts are in the best position to determine the parties' respective needs and their respective abilities to meet them, we will overturn modification orders only if it clearly appears that the trial court engaged in an unsustainable exercise of discretion. <u>Id</u>. The party challenging the court's order has the burden of showing that the order was improper and unfair. <u>In the Matter of Johnson & Johnson</u>, 158 N.H. 555, 558 (2009).

We first address whether the trial court erred in calculating the father's gross income. The statutory definition of gross income is broad. <u>In the Matter of LaRocque & LaRocque</u>, 164 N.H. 148, 153 (2012); <u>see</u> RSA 458-C:2, IV. It encompasses nonrecurring income. <u>LaRocque</u>, 164 N.H. at 153; <u>see</u> <u>In the Matter of Maves & Moore</u>, 166 N.H. 564, 567 (2014) (holding gross income encompassed capital gains income); <u>LaRocque</u>, 164 N.H. at 153 (holding gross income encompassed life insurance proceeds); <u>In the Matter of Sullivan & Sullivan</u>, 159 N.H. 251, 255 (2009) (holding gross income encompassed amount of loan forgiveness). It excludes "income earned at an hourly rate for hours worked, on an occasional or seasonal basis, in excess of 40 hours in any week." RSA 458-C:2, IV.

In this case, the father represents that he is "an elevator repair man who is paid an hourly wage that is broken up into several components." His pay stubs reflect that he receives "Regular," "Txbl Zone," "Double Time," "Holiday," "O/T

1.7," "Travel 2.0," and "Prem Vacation" pay. He "concedes that the regular pay, vacation pay and double time should be included in the calculation for child support."

The father argues that the other components "of his pay should not be factored in [to his gross income] as they are not guaranteed" and because they are "not significant in light of the overall picture." However, RSA 458-C:2, IV requires the trial court to include in gross income "all income from any source" regardless of whether that income source is "guaranteed" or "significant." See LaRocque, 164 N.H. at 153. Furthermore, the father concedes that such other components of his pay constitute approximately 10 to 13 percent of his annual income, a percentage that the trial court could reasonably have found to be significant. The father argues that calculating his child support obligation based upon these components of his pay requires him to work overtime. However, his pay stubs show that some weeks he received overtime, double time, or "txbl zone" pay without working 40 hours at his regular rate.

To the extent that the father argues that such components of his pay are "occasional" or "seasonal," we disagree. The father states that the percentage of his pay attributable to such components in 2014 and in the first ten weeks of 2015 was "almost the same." The trial court found that he "receives much of his income from OT and call time" and that its calculation of his monthly income was "very close to" that derived from his year-to-date income shown on his December 3, 2014 pay stub. The father offered no evidence that any portion of his work is seasonal, and nothing in the record compelled a finding that any component of the father's pay is "occasional" or "seasonal." Accordingly, we conclude that the trial court sustainably exercised its discretion by including all components of the father's pay in his gross income for the purpose of calculating his child support obligation.

We next address whether the trial court erred in calculating the father's monthly income. The father argues that the trial court should have divided the year-to-date total income shown on his March 18, 2015 pay stub by eleven weeks, instead of ten weeks, to calculate his average weekly income accurately. He argues that "[t]he pay period that ended on Thursday, January 1, 2015 was paid by check dated the following Wednesday . . . . [and t]hat pay period was included in the year to date earnings set forth on the [March 18, 2015] pay stub." However, the father offered no evidence that his employer included the pay period ending on January 1, which encompassed only one day in 2015, in the 2015 year-to-date calculation. See Johnson, 158 N.H. at 558. The mother contended that the year-to-date figure on the March 18, 2015 pay stub represented only the ten weeks in 2015. Upon this record, we cannot say that the trial court erred by

calculating the father's weekly pay on the basis of ten weeks in the year-to-date figure on the March 18, 2015 pay stub.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, and Lynn, JJ., concurred.

<strong>Eileen Fox,<br>Clerk</strong>